**ams**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DONALD IRWIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 04-4052-JAR** |
| | ) | |
| **PRINCIPAL LIFE INSURANCE CO.,** | ) | |
| **RAYTHEON AIRCRAFT CO., and** | ) | |
| **RAYTHEON AIRCRAFT CO. EMPLOYEE** | ) | |
| **BENEFIT TRUST,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **PRINCIPAL LIFE INSURANCE CO.,** | ) | |
| | ) | |
| **Counterclaimant,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DONALD IRWIN, and** | ) | |
| **CATHI A. IRWIN,** | ) | |
| | ) | |
| **Counterdefendants.** | ) | |

## <u>MEMORANDUM & ORDER</u>

The Court now considers Principal Life Insurance Company's (Principal) Motion to

Interplead Funds (Doc. 101), and Motion for Attorneys' Fees (Doc. 116).  Principal initially filed

its motion to interplead funds due under the group life insurance policies at stake in this case, in

the amount of $172,000, plus 4% interest, on August 12, 2005.  It requested that upon payment

of the funds into the Court, it be dismissed with prejudice from the lawsuit.  All parties

responded to the motion.  Both Donald Irwin (Donald) and Cathi Irwin (Cathi) responded

separately that they do not contest interpleading the funds, nor the principal sum of money.

However, they both dispute the rate and time period upon which interest should be charged on

the proceeds.  Raytheon Aircraft Co. (RAC) and Raytheon Aircraft Company Employee Benefit

Trust (RACEBT) filed a response arguing that if Principal is dismissed from the case, they

should be as well.[1]  Finally, Principal filed a Motion for Order Regarding Attorneys' Fees (Doc.

116) that Donald and Cathi both oppose.   The Court granted Principal's Motion to Interplead the

principal sum of $172,000 into an interest-bearing account (Docs. 137, 138, 144) and must now

determine the applicable interest rate, the term of interest, and the question of attorneys' fees.

As described more fully below, the Court grants the remainder of Principal's Motion to

Interplead Funds and requires it to deposit a sum of interest derived from the applicable interest

rate on proceeds left on deposit with Principal on December 17, 2003, plus 1%, during the period

between December 17, 2003 and October 4, 2005.  Furthermore, the Court grants Principal its

costs and attorneys' fees associated with the filing of the interpleader action.  The Court denies

both Donald and Cathi's requests for attorneys' fees made in their respective responses to

Principal's Motion for an Award of Attorneys' Fees.

### A.  Facts

On October 14, 2003, Cathi filed a petition for divorce from Stephen Irwin (Stephen) in

Butler County, Kansas District Court.  That same day, the Butler County District Court entered

an *ex parte* Temporary Order (TRO), pursuant to Cathi's request, prohibiting Stephen from

changing the beneficiary of his life insurance.  At the time, Stephen was insured under group life

insurance policies (the Plan) issued by Principal.  The Plan specifies that RAC is the plan

---

[1]The Court witholds any judgment on the propriety of claims against RAC or RACEBT in this
Memorandum and Order, but will address these parties' claims when it considers their summary judgment motion in
a separate Order.

administrator and plan sponsor of the group life insurance policies.  RACEBT is the policyholder

of the group life insurance policies.  At the time he enrolled in the Plan, Stephen designated

Cathi as the primary beneficiary of the life insurance policies and his mother, Sandy Wassner, as

a secondary beneficiary.  On November 9, 2003, Stephen signed a form attempting to change the

primary beneficiary on his life insurance policies.  He listed Donald, his father, as the primary

beneficiary, and Cathi as the secondary beneficiary.  On December 17, 2003, Stephen died.  No

divorce decree was ever entered by the Butler County District Court.

Cathi submitted a claim for death benefits available under Stephen's life insurance

policies dated January 2, 2004, which was eventually forwarded by RAC to Principal for

disposition.  Principal stamped this form and a copy of Stephen's death certificate "Received" on

February 16, 2004.  On February 16, 2004, the rate of interest on death proceeds left on deposit

with Principal was 3%.

On February 24, 2004, Marlene Brown, a human resources specialist at RAC, sent Kay

Root of Principal a facsimile attaching the change of beneficiary form from November listing

Donald as the primary beneficiary.  This was the first time Principal had received this form.  On

April 1, 2004, Donald submitted a claim for the same death benefits with Brown and she

forwarded the claim to Principal.  On May 14, 2004, Diane Nelson of Principal sent a letter to

counsel for Donald, referring to a letter he had sent the company on May 4, asking Principal to

"reconsider its position with respect to the beneficiary designation."  In that letter, Nelson states:

"It remains Principal Life's position . . . that the original beneficiary designation is controlling

absent any clear authority to the contrary."  On June 4, Nelson sent a letter to both claimants

stating that it was continuing to review the claims.  Principal never paid the $172,000 in group

life insurance proceeds to either Donald or Cathi.

Donald filed a diversity suit in this Court under Kansas insurance law on May 19, 2004. Principal filed a motion to dismiss based on ERISA preemption of Donald's claim. Rather than dismiss the case, this Court construed plaintiff's claim as an ERISA claim under 29 U.S.C. § 1132(a)(1)(B). Principal filed a counterclaim in interpleader under Fed. R. Civ. P. 22 and joined Cathi as a defendant so that the Court could determine the conflicting claims of Donald and Cathi, and of Principal's rights and obligations. Cathi filed a counterclaim against Principal for the benefits due under the Plan, and under 29 U.S.C. 1132(a)(3), arguing that Principal failed to place the disputed funds in an interest-bearing account at the time of Stephen's death, as directed by the Plan.

### B. Interest

Cathi and Donald both filed responses addressing the appropriate rate of interest to be applied to the insurance proceeds in this case. Both claimants advocate imposing prejudgment interest on the proceeds. Donald proposes the Kansas statutory prejudgment interest rate of 10%[2] while Cathi proposes the Kansas statutory prejudgment interest rate or the monthly average of the prime rate during the time the funds should have been paid.[3] Further, Cathi argues that interest should be paid by Principal beginning on the date of Stephen's death on December 17, 2003, until the time that the proceeds are actually distributed, while Donald and Principal agree that February 16, 2004, is the proper date from which interest should accrue.

ERISA does not expressly provide for prejudgment interest, but prejudgment interest is

---

[2]K.S.A. 16-201.

[3]Historic monthly average prime rates may be accessed at http://www.federalreserve.gov/releases.

available in ERISA cases at the Court's discretion.[4]   Although federal law usually would control

the prejudgment interest rate on a federal claim, Tenth Circuit cases look to state law in

determining the prejudgment interest rate in ERISA cases.[5]   Prejudgment interest is designed to

compensate a wronged party for the period during which the party was denied the full use and

benefit of money.[6]   "'The district court must first determine whether the award of prejudgment

interest will serve to compensate the injured party.  Second, even if the award of prejudgment

interest is compensatory in nature, the district court must still determine whether the equities

would preclude the award of prejudgment interest.'"[7]   Currently, the prejudgment interest rate in

Kansas is 10%.[8]

The Court must also consider cases dealing with prejudgment interest in interpleader

cases.[9]  The Ninth Circuit developed three factors to consider whether interest should be awarded

on interpleaded funds:

> (1) whether the stakeholder unreasonably delayed in instituting the

---

[4]*See, e.g.*, *Biava v. Insurers Admin. Corp.*, 48 F.3d 1231, 1995 WL 94461, at *5–6 (10th Cir. 1995) (unpublished table decision); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993); *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1009 (3d Cir. 1992); *Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268 (6th Cir. 1990); *Van Hoove v. Mid-America Bldg. Maintenance, Inc.*, 841 F. Supp. 1523, 1536–37 (D. Kan. 1993); *Wilson v. Metropolitan Life Ins. Co.*, No. 03-2388-CM, 2005 WL 1661621, at *2–4 (D. Kan. July 15, 2005).

[5] *Biava*, 1995 WL 94461, at *5–6; *Van Hoove*, 841 F. Supp. at 1536–37; *Wilson*, 2005 WL 1661621, at *2 (citing *Allison v. Bank One-Denver*, 289 F.3d 1223 (10th Cir.2002)).

[6]*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002); *Anthuis*, 971 F.2d at 1009.

[7]*Caldwell*, 287 F.3d at 1286 (quoting Eastman Kodak Co., 949 F.2d 317, 321(10th Cir. 1991)) (further quotations omitted).

[8]K.S.A. 16-201.

[9]*E.g.*, *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79 (9th Cir. 1982); *Nichols v. Unum Life Ins. Co. of Am.*, 287 F. Supp. 2d 1088 (N.D. Cal. 2003); *Albanese v. Pfizer, Inc.*, No. 94-2223-KHV, 1996 WL 225192, at *6 (D. Kan. Mar. 19, 1996).

action or depositing the fund with the court; (2) whether the stakeholder used the fund for his benefit and would be unjustly enriched at the expense of the claimants who have claim to the fund; and (3) whether the stakeholder eventually deposited the fund into the court's registry.[10]

This action was instituted in the first instance by Donald on May 19, 2004, under Kansas insurance law. According to the summary judgment record, the suit was filed prior to Principal reaching a firm decision as to who the rightful beneficiary under the terms of the Plan was, and before it was able to complete an investigation of the competing claims. In fact, Principal sent a letter to both claimants on June 4, 2004, stating that it was still reviewing the claims. Principal filed a motion to dismiss the complaint approximately two months later on July 20. The entire basis for the motion to dismiss was that ERISA preempted Donald's state law claims. Principal filed its Answer and counterclaim in interpleader on December 6, 2004—less than one month after the Court denied its motion to dismiss by construing Donald's claims as arising under ERISA.[11]

The Court finds that Principal did not unreasonably delay in instituting this action. It had not even concluded its internal investigation of the competing claims to the proceeds when Donald filed his Complaint. Within three weeks of this Court's Order construing Donald's Complaint as arising under ERISA, Principal filed its counterclaim in interpleader. Cathi urges that the mere act of filing the motion to dismiss constituted a dilatory motive on Principal's part. The Court finds no such evidence. Principal filed its motion to dismiss under the belief that the

---

[10]*Gelfgren*, 680 F.2d at 82 (citations omitted).

[11]Donald's Answer to the counterclaim states that he, "has no objection to the payment to the Clerk of the U.S. District Court of the proper amount of funds plus any accrued interest and that upon the payment of such funds that the Defendant Principal should be dismissed with prejudice." (Doc. 26 at 3.)

entire action by Donald was preempted.  Principal has filed no dispositive motions advocating

awarding the insurance proceeds to one claimant or the other.  Although the Court denied the

motion to dismiss, it agreed with Principal on the preemption issue.  Even before the Court ruled

on the motion to dismiss, Principal sent correspondence to the Court and plaintiff's counsel

expressing its desire to expedite the proceedings and requesting the Court rule on the pending

motion to dismiss:

> Although Principal believes Cathi Irwin to be the proper recipient
> of the benefits, Donald Irwin's claims against Principal have
> resulted in Principal being unable to pay the benefits to Cathi Irwin
> with fear of potential double payment.  At the same time, Principal
> has been advised by Cathi Irwin that she may also file suit against
> Principal for failure to pay the benefits, giving rise to Principal's
> fear of liability for failure to make prompt payment.  Although
> Principal anticipates the need to interplead the money into the
> court for final determination of these competing claims, it believes
> it is unable to do so in this action while this Motion remains
> pending.  Therefore, we would ask that under those circumstances
> the Court expedite its review and ruling on this Motion, allowing
> our client to proceed quickly toward resolution of this matter.[12]

The Court also finds that Principal did not unnecessarily delay in actually depositing the

funds into the court's registry.  In the time between Principal's Answer and its motion to

interplead funds on August 12, 2005, it appears that the parties were also disputing a claim made

by Donald for accidental death and dismemberment insurance under the Plan.  This claim was

voluntarily dismissed on July 18, 2005.  The stipulation of dismissal with prejudice was filed on

July 22, 2005.  It was only at this point that all parties appear to have come to an agreement on

the principal sum of money at stake.  Less than one month transpired between the dismissal of

---

[12]Letter from Rebecca S. Jelinek, Counsel for Principal, to the Court (Oct. 20, 2004) (attached).

the claim for accidental death and dismemberment insurance proceeds and Principal's motion to interplead funds.  Therefore, the first *Gelfgren* factor cuts against an award of prejudgment interest.

The Court finds that the second factor also cuts against an award of prejudgment interest in this case.  Principal admitted in its Answer to Cathi's counterclaim for breach of fiduciary duty that it had not placed the life insurance proceeds in question into an interest-bearing account.  However, it also stated that it did not dispute that the proper beneficiary was entitled to interest as if the funds had been placed in such an account.  It has proposed calculating the interest at a rate of 4%.  This proposed interest rate is based on the terms of the Plan, which provides "[u]pon your death, the Scheduled Benefit in force on the date of your death will be placed in an interest-bearing draft account."  On February 16, 2004, the interest rate on draft accounts at Principal was 3%.   The Court finds that any unjust enrichment enjoyed by Principal in retaining the funds up until October 2005 may be remedied by imposing the proposed interest rate of 4%, which is 1% more in interest than the fund would have earned had it been placed in a draft account.  Neither Donald nor Cathi explain why this amount would not compensate the proper beneficiary for the time during which they were unable to use the funds.  It is undisputed that if the funds would have been placed in a draft account with Principal on February 16, 2004, they would have accrued 3% interest until one of the claimants was awarded the fund.  The Court finds that the applicable interest rate on December 17, 2003, plus 1%  is sufficient to restore the fund for the rightful beneficiary, while not punishing Principal in violation of

8

ERISA.[13]  Therefore, the parties' request for an award of prejudgment interest at a rate of 10% is

denied.

In non-interpleader ERISA cases where prejudgment interest is imposed, prejudgment

interest is awarded from the time of loss.[14]  The Tenth Circuit has held that the "time of loss"

begins to run on the date the claim for benefits was first filed.[15]  However, the Court finds that

the language of the Plan controls in this case.  The Plan provides for the funds to be placed in a

draft account upon the death of the participant.  Principal admits that it failed to comply with the

Plan by not placing the disputed funds into a draft account "upon [Stephen's] death."  Therefore,

the Court finds that interest should be paid by Principal beginning on the date of Stephen's

death.  However,  interest is not available after the date that the funds were deposited into the

court registry.  "It is well accepted that 'the interpleading party bears no liability for interest on

the interpleaded fund after the date that he pays . . . into the court.'"[16]  Therefore, the parties are

ordered to confer in an attempt to reach a stipulation on the amount of interest due based on  the

rate of interest on death proceeds left on deposit with Principal on December 17, 2003, plus 1%.

The parties are ordered to then file a stipulation on the amount of interest that Principal should

deposit into the court's registry.   Upon payment of interest into the court's registry, Principal is

---

[13]*Allison v. Bank One-Denver*, 289 F.3d 1223, 1243–44 (10th Cir. 2002) (explaining that the Court may not impose an excessive prejudgment interest rate, effectively converting an award of prejudgment interest from compensatory to punitive).

[14]*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002).

[15]*Id.* at 1287.  *But see Nichols v. Unum Life Ins. Co. of Am.*, 287 F. Supp. 2d 1088, 1094 (N.D. Cal. 2003) (awarding interest from the date the insurance company's investigation ended); *Life Ins. Co. of N. Am. v. Thorngren*, No. 07-464-S-BLW, 2005 WL 2387596 (D. Idaho Sept. 27, 2005) (awarding interest from the date the insurer discovered it was open to multiple liability until the date the funds are placed in the court's registry).

[16]*Nichols*, 287 F. Supp. 2d at 1091 (collecting cases and quoting *Fidelity Bank v. Commonwealth Marine & Gen. Assurance Co.*, 592 F. Supp. 513, 524 (E.D. Pa. 1984)); *see Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164–65 (5th Cir. 1976).

dismissed with prejudice from this case.

### C. Attorneys' Fees and Costs

Under ERISA, the court in its discretion, may allow an award of reasonable attorneys' fees and costs of the action to "either party."[17]  Likewise, "[t]he decision to award attorneys' fees and costs to a stakeholder in an interpleader action is left to the court's sound discretion."[18] "[W]here the stakeholder is disinterested, i.e., does not claim any right to the fund, concedes its liability in full, deposits the fund in court, seeks discharge, and does not appear to the court to be culpable, it is appropriate and equitable to allow fees and costs from the fund."[19]

Both Donald and Cathi argue that Principal is not disinterested and is culpable at some level, so as not to deserve an award of fees and costs.  First, the Court finds that Principal is a disinterested stakeholder.  Contrary to Cathi's definition of "disinterested" without reference to legal citation, the term means that the entity does not claim entitlement to any of the interpleader funds.[20]  Principal explicitly states in its briefs on multiple occasions that it holds no claim to the fund.  Merely requesting attorneys' fees and costs does not constitute a claim of entitlement to the fund at issue.  However, the Court does find that Principal is not disinterested to the extent it contests the interest award, or to the extent it challenges any underlying factual disputes related to the claims of either Cathi or Donald.  "Expenses arising from a dispute regarding the adequacy of the amount deposited with the court, are generally not awarded to the

---

[17]29 U.S.C. § 1132(g)(1).

[18]*Nat'l Amateur Bowlers, Inc. v. Tassos*, 715 F. Supp. 323, 326 (D. Kan. 1989); *Albanese v. Pfizer, Inc.*, No. 94-2223-KHV, 1996 WL 225200, at *1 -3 (D. Kan. Mar. 22, 1996); *Transamerica Premier Ins. Co. v. Growney*, No. 94-2057-GTV, 1994 WL 409569, at *2 (D. Kan. Aug. 1,1994), *aff'd.*, 70 F.3d 123 (10th Cir. 1995).

[19]*Growney*, 1994 WL 409569, at *2; *United Bank of Denver, N.A. v. Oxford Props., Inc.*, 683 F. Supp. 755, 756 (D. Colo. 1988) (citing *United States Fidelity & Guaranty Co. v. Sidwell*, 525 F.2d 472 (10th Cir. 1975)).

[20]*See Tassos*, 715 F. Supp. at 326; *United Bank of Denver*, 683 F. Supp. at 756.

stakeholder."[21]  Therefore, the Court finds that an award of fees related to contesting the interest rate issue should not be awarded, nor should Principal be awarded fees associated with its response to Cathi's  cross-motion for summary judgment.

Cathi suggests that there is no bona fide dispute between the parties for the insurance proceeds, as she is clearly entitled to them.  This is not an appropriate challenge to a motion for attorneys' fees, but instead an argument against allowing for interpleader.  Yet all parties have already consented to the principal sum of money being deposited in the court registry.  By definition, this means that there is a dispute over the interpleaded funds.  The Court will rule separately on Donald and Cathi's competing claims for the interpleaded funds.  Suffice to say, however, that determination of the proper beneficiary in this case involves an analysis of complicated questions of law, and the Court does not find Principal culpable for withholding the insurance proceeds rather than exposing itself to multiple liabilities due to the unsettled nature of the legal questions involved.

The parties urge that Principal is culpable because it failed to place the life insurance proceeds into an interest-bearing account after Stephen's death.  The Court finds that any unjust enrichment enjoyed by Principal will be remedied by the Court's award of interest as discussed earlier.  Also discussed earlier, there is no evidence that the delay in Principal interpleading funds was due to bad faith or dilatory motive.  Donald filed suit before Principal concluded its investigation, and Principal promptly filed a motion to dismiss because the Complaint was based on preempted state law.  Even before the Court decided its motion to dismiss, Principal was eager to institute an interpleader action.  As soon as the total sum of money in dispute was

---

[21]*Life Ins. Co. of N. Am. v. Thorngren*, No. 07-464-S-BLW, 2005 WL 2387596 (D. Idaho Sept. 27, 2005) (citing *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962)).

agreed upon by the parties, Principal instituted its Motion to Interplead Funds.

The reasoning behind awarding disinterested stakeholders attorneys' fees out of the

interpleaded funds has been stated as follows:

> "It is thought appropriate to award counsel fees to [a disinterested]
> stakeholder because the retention of counsel has in all liklihood
> [sic] been necessitated not because of the stakeholder's
> wrongdoing but rather because he is the mutual target in a dispute
> which is not of his own making. Moreover, the stakeholder is often
> viewed as having performed a service to the claimants by initiating
> a proceeding which will expeditiously resolve their claims and by
> safeguarding the disputed fund by deposit in court, which at the
> same time guarantees the prevailing claimant immediate
> satisfaction without the need for execution proceedings."[22]

The Court finds that this is a classic case of a disinterested stakeholder who is not a target of the

dispute because of wrongdoing, but rather because it is faced with competing claims.  Principal

is entitled to an award of reasonable attorneys' fees and costs associated with filing the

interpleader action.  "[A]n unresolved issue of attorney's fees for the litigation in question does

not prevent judgment on the merits from being final."[23]  The Court retains subject matter

jurisdiction over the issue of attorneys' fees despite lacking jurisdiction over the underlying

claim.[24]  In the interest of preserving the interpleader fund for the rightful beneficiary in this

case, the Court declines to award attorneys' fees related to Principal's motion to dismiss.

Although this motion was clearly made in good faith reliance on applicable law, it did not relate

---

[22]*United Bank of Denver, N.A.*, 683 F. Supp. at 757 (quoting 3A Moore's Federal Practice ¶ 22.16[2], at 22-171 to 173).

[23]*Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988); *see E.E.O.C. v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1250 (10th Cir. 1999).

[24]*United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1056–58 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 2964 (2005); *see also Olsen v. Aebersold*, Nos. 03-2230, 03-2238, 2005 WL 2093012 (10th Cir. Aug. 31, 2005).

to its interpleader action.  Therefore, Principal is directed to file an application pursuant D. Kan.

R. 54.2 outlining its reasonable attorneys' fees expended in filing its Answer and Counterclaim

in Interpleader, the original Motion to Interplead Funds, and related documents.[25]

The Court declines to order an award of attorneys' fees to the successful claimant.  A

claim for attorneys' fees against the stakeholder in an interpleader case should not be awarded

unless there is evidence that the stakeholder acted in bad faith, was vexatious, or otherwise

improper.[26]  As already discussed, the Court finds no evidence of bad faith or improper conduct

by Principal in this case.  Therefore, both Donald and Cathi's requests for attorneys' fees in this

case are denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT:**

1.  The parties are directed to meet and confer regarding the appropriate amount of

interest to be deposited into the court's registry along with the principal sum of $172,000

that was deposited on October 4, 2005.  The parties are directed to file a stipulation with

the Court of the accounting and total sum of interest to be charged as set forth in this

Order.  The interest should be deposited into the same interest-bearing account as the

principal, as set forth in Docs. 137, 138, and 144.

2.  Upon depositing the interest amount into the court's registry, Principal is dismissed

from the case **with prejudice**.

---

[25]*See Albanese v. Pfizer, Inc.*, No. 94-2223-KHV, 1996 WL 225200, at *1 -3 (D. Kan. Mar. 22, 1996) (allowing only for attorneys' fees incurred in the interpleader filing); *see also Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*, 748 F. Supp. 177, 184 (S.D.N.Y. 1990) (same).

[26]*Gelfgren  v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982); *Murphy v. Travlers Ins. Co.*, 534 F.2d 1155, 1165 (5th Cir. 1976) (collecting cases); *Thorngren*, 2005 WL 2387596, at *5.

3.  Principal's Motion for Order Regarding Attorneys' Fees (Doc. 116) is **granted** as to the issue of entitlement.  Principal is entitled to an award of reasonable attorneys' fees associated with filing its interpleader action in this case, as more fully described in this order.  Principal is ordered to submit an application for reasonable attorneys' fees in compliance with D. Kan. R. 54.2 as well as the standards for fee applications as set forth by the Tenth Circuit and this Court **no later than January 4, 2006.**

4.  Donald Irwin and Cathi Irwin's requests for attorneys' fees, as set forth in their responses (Docs. 122, 125, 126, 129) to the Motion for Order Regarding Attorneys' Fees are **denied**.

**IT IS SO ORDERED.**

Dated this 10th  day of December 2005.


　　　　　　　　　　　　　　　 S/ Julie A. Robinson
　　　　　　　　　　　　　　　Julie A. Robinson
　　　　　　　　　　　　　　　United States District Judge

14