**ams**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DONALD IRWIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 04-4052-JAR** |
| | ) | |
| **PRINCIPAL LIFE INSURANCE CO.,** | ) | |
| **RAYTHEON AIRCRAFT CO., and** | ) | |
| **RAYTHEON AIRCRAFT CO. EMPLOYEE** | ) | |
| **BENEFIT TRUST,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **PRINCIPAL LIFE INSURANCE CO.,** | ) | |
| | ) | |
| **Counterclaimant,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DONALD IRWIN, and** | ) | |
| **CATHI A. IRWIN,** | ) | |
| | ) | |
| **Counterdefendants.** | ) | |

## MEMORANDUM & ORDER

The Court now considers renewed cross motions for summary judgment by Donald

Irwin and Cathi Irwin (Docs. 139, 141) and Raytheon Aircraft Company (RAC) and Raytheon

Aircraft Company Employee Benefit Trust's (RACEBT) Second Motion for Summary

Judgement (Doc. 133).

As described more fully below, the Court grants summary judgment in favor of Donald

Irwin and against Cathi Irwin as to their adverse claims to the insurance proceeds interpleaded

into the court's registry under ERISA.   However, the Court exercises its equitable powers and

imposes a constructive trust on the interpleaded fund in favor of Cathi Irwin.  The Court grants

summary judgment in favor of Donald Irwin on Cathi's state law claim for tortious interference

with contract.  Finally, the Court grants summary judgment in favor of RAC and RACEBT.

## I.  UNCONTROVERTED FACTS

The following facts are uncontroverted.  On October 14, 2003, Cathi Irwin (Cathi) filed

a petition for divorce from Stephen Irwin (Stephen) in Butler County District Court, Kansas.

That same day, the Butler County Court entered an *ex parte* Temporary Order (TRO), pursuant

to Cathi's request, that stated in relevant part:

> Each of the parties is restrained from altering, removing,
> spending, mortgaging, pledging or otherwise disposing of or
> encumbering any of their assets, except those reasonably
> necessary for their support or in order to comply with the orders
> of this Court.  In addition, both parties are restrained and enjoined
> from canceling any existing insurance coverage or utility services,
> or altering or changing the beneficiaries or insured parties under
> any policies of insurance.

The TRO was served on Stephen on October 14, 2003 in person at RAC, his employer.  At that

time, Stephen was insured under group basic and optional life insurance policies (the Plan)

issued by Principal Life Insurance, Co. (Principal).  The policies are governed by a Summary

Plan Description (the Plan).  The Plan specifies that RAC is the plan administrator and plan

sponsor of the group life insurance policies.  RACEBT is the policyholder of the group life

insurance policies.  Under the terms of the Plan:

> If you die while insured for Member Life Insurance,
> [Principal] will pay your beneficiary the Schedule Benefit in force
> on the day of your death. . . .
> . . .
> You should name a beneficiary at the time you enroll for
> insurance.  You may later change your beneficiary by filing a
> written request with [Raytheon Aircraft Company]. . . . A change
> in your beneficiary will not be in force until [Raytheon Aircraft

Company] records the change.[1]

At the time he enrolled in the insurance policies, Stephen Irwin designated Cathi as the primary beneficiary of the life insurance policies and his mother, Sandy Wassner, as secondary beneficiary. On November 9, 2003, Stephen signed a Change of Beneficiary Form for his life insurance policies. He listed Donald Irwin (Donald), his father, as the primary beneficiary, and Cathi as the secondary beneficiary. The Change of Beneficiary Form was stamped "Received" by "Member Services" on November 20, 2003. The bottom of the form lists December 3, 2003 as the effective date of change, and is initialed next to a space for "Processed by," dated December 3, 2003. On December 17, 2003, Stephen died. No divorce decree was ever entered by the Butler County District Court.

Under the Plan, RAC's role was to present basic information regarding the base and optional Member life insurance plans to its employees, provide plan enrollment and beneficiary designation forms to its employees, gather and maintain relevant information regarding enrollment and beneficiary designations, withhold payroll deductions for payment of premiums, and forward enrollment and beneficiary designation forms and insurance benefit history information to Principal. However, the Plan states that Principal, "reserve[s] complete discretion to construe or interpret the provisions of this group insurance, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. Our decisions in such matters shall be controlling, binding, and final."

The Plan provides that written proof of loss[2] should be sent to Principal within 90 days after the date of loss. It states: "For purposes of satisfying the claims processing requirements

---

[1](Doc. 133, Ex. 2 at 16.)

[2]Under the Plan, written proof of loss may include claim forms, a death certificate, beneficiary designation forms, etc.

of . . . []ERISA[], receipt of claim will be considered to be met when the appropriate claim form is received by [Principal]."  Further, the Plan explains that ERISA allows up to 45 days from receipt of the claim for processing with extensions permitted in certain circumstances.

Marlene Brown, a Human Resources Specialist at RAC, handled RAC and RACEBT's involvement in processing the claims relating to Stephen Irwin.  On December 24, 2003, Brown mailed information regarding unpaid wages, life insurance, and other matters to Cathi.  At this time, Brown was unaware that Stephen Irwin had completed a second Beneficiary Designation Form.  Cathi submitted a claim dated January 2, 2004 for death benefits available under Stephen's life insurance policies; and Brown forwarded this form to Principal for disposition. Principal stamped this form and a copy of Stephen's death certificate "Received" on February 16, 2004.  The death certificate attached to Cathi's claim has a certified date of January 9, 2004. On February 24, 2004, Brown sent Kay Root of Principal a facsimile with the following message:

> Per our conversation a few minutes ago following is a new beneficiary designation form that was just discovered this morning, in connection with the life claim filed for Stephen L. Irwin, 515862104.
>
> The Primary beneficiary was changed on 11/09/2003 to Donald L. Irwin, father of Stephen L. Irwin, with Cathi A. Irwin being designated as Secondary beneficiary.
>
> I will appreciate your sharing this with Diane Nelson, who has been processing this claim, as well as our conversation concerning this change of beneficiary.

Sometime in February, Donald contacted the Butler County District Court and obtained a copy of the TRO.  Additionally, he received a letter dated February 11, 2005, from a court clerk at the Butler County District Court Clerk's Office stating: "I am sending you this letter to

let you know in writing that there was never a hearing scheduled in the above listed case. Because there was not a hearing, there is no transcript for the case." On April 1, 2004, Donald submitted a claim for the same death benefits with Brown and she forwarded the claim to Principal. On May 14, 2004, Diane Nelson of Principal sent a letter to counsel for Donald, referring to a letter he had sent the company on May 4, asking Principal to "reconsider its position with respect to the beneficiary designation." In that letter, Nelson states: "It remains Principal Life's position . . . that the original beneficiary designation is controlling absent any clear authority to the contrary." On June 4, Nelson sent a letter to both claimants stating that it was continuing to review the claims. Principal never awarded the group life insurance proceeds to either Donald or Cathi.

Donald filed a diversity suit in this Court under Kansas insurance law on May 19, 2004. Principal filed a motion to dismiss based on ERISA preemption of Donald's claim. Rather than dismiss the case, this Court construed Donald's claim as an ERISA claim under 29 U.S.C. § 1132(a)(1)(B). Principal filed a counterclaim in interpleader under Fed. R. Civ. P. 22 and joined Cathi as a defendant so that the Court could determine the conflicting claims of Donald and Cathi, and of Principal's rights and obligations. Cathi filed a counterclaim against Principal for the benefits due under the Plan, and under 29 U.S.C. § 1132(a)(3), arguing that Principal failed to place the disputed funds in an interest bearing account at the time of Stephen Irwin's death, as directed by the Plan. Cathi also filed a cross claim against Donald for tortious interference with contract.

Judge Sebelius subsequently granted a motion by Donald to join RAC as a defendant in this action since it was the plan administrator. Later Judge Sebelius ordered that Donald could amend his complaint for a second time to join RACEBT as a defendant after learning that it was

the policyholder. Donald represented in both motions to amend that RAC and RACEBT were "necessary parties" within the meaning of Fed. R. Civ. P. 19. Cathi does not assert claims against either RAC or RACEBT.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] A fact is only material under this standard if a dispute over it would effect the outcome of the suit.[4] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[5] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[6]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[7] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[8] The burden may be met by showing that there is no evidence to support

---

[3]Fed. R. Civ. P. 56(c).

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5]*Id.*

[6]*Id.* at 251–52.

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

the nonmoving party's case.[9]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[11]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[12]

## III.  DISCUSSION

All parties to this suit filed dispositive motions with the Court prior to a telephone conference held on September 8, 2005.  During that conference, the Court indicated its intent to grant Principal's Motion to Interplead Funds as to proceeds under Stephen Irwin's group base and optional life insurance policies in the amount of $172,000.  Nonetheless, the Court acknowledged that the parties disputed the rate and time period for which interest should be awarded on the uncontested principal sum of money at stake.  The parties also contested whether Principal should be awarded attorneys' fees under ERISA.  Therefore, the Court subsequently ordered the principal sum of $172,000 to be deposited into the court's registry, but declined to dismiss Principal until it decided the interest rate and attorneys' fees issues.  The

---

[9]*Id.*

[10]*Id.* (quoting Fed. R. Civ. P. 56(e)).

[11]*James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citing *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691–92 (10th Cir.1981)), *cert. denied*, 523 U.S. 1048 (1998).

[12]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Court has now resolved those issues in a separate order,(Doc. 151.), dismissing Principal with prejudice from this case upon deposit of the appropriate amount of interest into the court's registry.

Also during the September 8 hearing, the Court denied without prejudice all of the summary judgment motions pending at that time, and instructed the parties to re-file their motions addressing certain specific issues not briefed in the original motions.  The Court now considers these most recent motions: (1)  Donald Irwin's Motion for Summary Judgment (Doc. 139); (2) Cathi Irwin's Second Motion for Partial Summary Judgment Against Donald Irwin (Doc. 141); and (3) Second Motion for Summary Judgment of RAC and RACEBT (Doc. 133).[13]

### Cross Motions for Summary Judgment between Donald and Cathi

The issue in this case of who should be awarded the life insurance proceeds involves purely legal questions, as almost no material facts are in dispute.  Therefore, the Court notes that this case may appropriately be decided on summary judgment.  Donald and Cathi present competing claims for the life insurance proceeds plus accrued interest at issue in this case, which has been interpleaded into the Court's registry.  The specific legal issues that the parties present with regard to the ERISA claims are: (1) whether Kansas law applies to determine the appropriate beneficiary under the life insurance proceeds in question; (2) whether the TRO is a qualified domestic relations order under ERISA; and (3) whether a constructive trust should be imposed in favor of Cathi on the interpleader fund.  The Court will then address Cathi's state law claim for tortious interference with contract.

### A.  ERISA Claims

_____

[13]The Court acknowledges that the parties incorporate the arguments made in their previous summary judgment briefs.

### 1.  Choice of Law

Despite the Court's directive in its September 8 telephone conference that the parties address preemption, and thus, the appropriate choice of law on the issue of determining the proper beneficiary in this case, both parties give short shrift to the issue.  Cathi maintains that the Court need not consider the issue because Stephen never effectively filed a Change of Beneficiary Form to be considered by Principal prior to her submission of a claim.  In contrast, Donald argues that Stephen effectively changed his beneficiary designation according to the terms of the Plan.  Further, Donald submits that the ERISA provision that requires the plan administrator or fiduciary to award benefits in accordance with the documents and instruments governing the Plan[14] preempts any state law to the contrary, including the TRO.  Specifically, this Court must decide if the TRO, and caselaw construing its application, may be considered by this Court; or rather, if ERISA's express provision mandating a plan administrator determine beneficiary status based only on the plan documents controls.  First, the Court considers Cathi's argument that it need not consider the doctrine of preemption because Stephen's Change of Beneficiary Form was never made effective under the terms of the Plan.

### a.  Effectiveness of Change of Beneficiary Form

Cathi argues that the Court need not address the issue of ERISA preemption because Stephen never effectively changed the primary beneficiary of the insurance from Cathi to Donald.  In support of this argument, Cathi points to the fact that RAC did not forward Principal the Change of Beneficiary Form until February 24, 2004, after Cathi had already filed her claim.  Cathi takes the position that the benefits were due and payable to her on February 16,

---

[14]*See* 29 U.S.C. § 1104(a)(1)(D).

9

2004—45 days after she signed and dated her notice of claim—and therefore, the Change of Beneficiary Form was untimely received by Principal.  It is undisputed that Stephen completed a Change of Beneficiary Form and dated it November 9, 2003.  Cathi does not appear to dispute that RAC received this form on the date it was stamped "Received," November 20, 2003.  Instead, Cathi argues that RAC had "listed" Cathi as the beneficiary of the life insurance proceeds until February 24, 2004.

When "interpreting the terms of an ERISA plan [the Court] examine[s] the plan documents as a whole and, if unambiguous . . . construe[s] them as a matter of law."[15]  To change a designated beneficiary under this Plan, a participant must fill out a written request.  The change is not effective until the planholder (RAC) "records" the change.  The verb "records" is not defined in the Plan.  Donald urges that "records" is synonymous with "received."  Since the form was received by RAC on November 20, 2003, Donald maintains that Stephen effectively changed his beneficiary designation.  Donald argues further that Stephen's act of writing and delivering the beneficiary designation sufficiently manifested his intent to change beneficiaries, and operated to affect the change.  Cathi points to the facsimile cover sheet from Brown to Kay Hook at Principal, which shows that the Change in Beneficiary Form was not discovered by RAC until February 24, 2004 and she states that "[o]bviously, Raytheon had not recorded the change."

The Court finds that under the terms of the Plan, the form became effective prior to Stephen's death.  Cathi does not dispute that the form was signed by Stephen on November 9, 2003, nor that RAC received it on November 20.  The form itself states that the effective date

---

[15]*Allison v. Bank One-Denver*, 289 F.3d 1223, 1233 (10th Cir. 2002).

for the change and the date the form was "processed" was December 3, 2003.  The Court finds

that the Change of Beneficiary Form became effective either when RAC received it on

November 20, or when someone from RAC initialed the form on December 3, 2003 as

"processed" and not when it was "discovered" and forwarded to Principal on February 24,

2004.  Although the verb "records" is not defined in the Plan, the Court finds that this is a

reasonable interpretation.  Clearly, if the Plan intended changes of beneficiaries only to be

effective upon receipt by Principal, it would have explicitly stated as much.  To be sure, the

Plan specifies that a receipt of a <u>claim</u> for purposes of ERISA timing requirements is considered

to be met "when the appropriate claim form is <u>received</u> by [Principal]."[16]  Instead, the Plan

specifies that the effective date for changing a beneficiary is triggered only by action of RAC.

Cathi fails to explain how Marlene Brown's lack of knowledge of this form after Stephen's

death indicates that the form was not made effective before Stephen's death.  Because the Court

finds that the form was effective prior to Stephen's death under the terms of the Plan, the Court

need not consider Donald's substantial compliance argument.[17]

   As Principal correctly points out, Cathi's claim form was stamped received by Principal

on February 16, 2004.  As previously noted, the date by which ERISA's timing requirements

are measured is the date Principal received the claim paperwork, not the date the claimant

---

[16](Doc. 133, Ex. 2 at 20 (emphasis added)).

[17]The Court notes that the legal authority cited by Donald in support of his substantial compliance argument predates ERISA.  *See Collins v. United States*, 161 F.2d 64, 67–68 (10th Cir. 1947).  However, the Tenth Circuit has held that "ERISA does not preempt the state common law doctrine of substantial compliance."  *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1052 (10th Cir. 1992); *but see Allison v. Bank One-Denver*, 289 F.3d 1223, 1237 (10th Cir. 2002) (explaining that the doctrine will not be applied when it would deny a party the benefit of "clearly-defined written procedures contained in the plan.").  Here, the Court is faced with construing the term "records," which is not clearly defined in the Plan.  Therefore, the doctrine would not be preempted by ERISA, and would apply to the Change of Beneficiary Form in this case.

signed the claim form.  According to Cathi's calculations, the insurance proceeds were due and payable to her on February 16, 2004, which was 45 days after she submitted her claim form on January 2, 2004.  The Court agrees with Principal that this is an untenable position.[18]  First, Cathi submits no evidence to suggest that Principal actually received her claim form on January 2, 2004.  Second, Marlene Brown of RAC did not sign the claim form until February 9, 2004.  Presumably, Brown would have signed the form prior to forwarding it to Principal.  There is no dispute that the "Received" stamp dated February 16, 2004, by Principal was valid.  Therefore, the Court finds that there is no genuine issue of material fact as to whether Principal actually received the claim form on February 16, 2004.  Thus, the 45 day time period under ERISA for Principal to determine the proper beneficiary did not begin to run until February 16, 2004 and Cathi was not entitled as a matter of law to benefits under the express terms of the Plan or ERISA when Principal received the other change of beneficiary form on February 24.

### b.  Preemption

The plan at issue in this case is an employee welfare plan, whose administration is governed by ERISA.[19]  In its prior Order Denying Principal's Motion to Dismiss, this Court construed Donald's state law insurance claim as one under 29 U.S.C. § 1132(a)(1)(B), "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[20]  The Court

---

[18]Principal filed a response to Cathi's Second Motion for Summary Judgment solely addressing this issue. (Doc. 146.)

[19]*See* 29 U.S.C. § 1002(1).

[20]§ 1132(a)(1)(B).  The Court construed Donald's request for attorneys' fees as a claim under § 1132(g)(1), which was disposed of in a separate order.  (Doc. 151.)

construed Donald's request for attorneys' fees as a claim under § 1132(g)(1).  As this Court has already explained, ERISA has an express preemption provision, which states that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[21]   The term "relate to" in § 1144(a)  means it has a connection with or reference to the Plan.[22]  The Supreme Court has repeatedly observed that this provision is "clearly expansive."[23]   At the same time, it "has recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'"[24]  To determine if a state law has a prohibited connection with the Plan, the Court must look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans."[25]   For purposes of § 1144, state law includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."[26]

In *Egelhoff*, the Supreme Court considered whether a Washington statute had an impermissible connection with an ERISA plan by dictating that a beneficiary designation of a former spouse in a non-probate asset, prior to dissolution of a marriage, passes as if the former spouse failed to survive the decedent.  The Court determined that ERISA preempted this state

---

[21]§ 1144(a).

[22]*See, e.g., Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987).

[23]*Egelhoff*, 532 U.S. at 146 (citing *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)); *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (collecting cases).

[24]*Egelhoff*, 532 U.S. at 146.

[25]*Id.* (internal quotations omitted).

[26]29 U.S.C. § 1144(c)(1).

13

statute.[27]  First, the Court determined that the statute ran counter to an express provision in ERISA that states a fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA],"[28] as well as ERISA's definition of "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan."[29]  The Court found that the Washington statute "governs the payment of benefits, a central matter of plan administration," and is therefore, preempted.[30]  The Court also found that the Washington statute interfered with ERISA's goal of creating uniformity in the administration and processing of benefits.[31]

The Court asked the competing claimants in this case to re-brief their summary judgment motions because in their initial briefs the parties solely addressed their competing claims under Kansas law.  Incidentally, Kansas case law has dealt with substantially similar facts in four cases that the parties extensively discussed in those initial briefs.[32]  Nonetheless, only the case of *Willoughby* dealt with insurance policies governed by ERISA.  That case was

---

[27]*Egelhoff*, 532 U.S. at 146.

[28]29 U.S.C. § 1104(a)(1)(D).

[29]§ 1002(8).

[30]*Egelhoff*, 532 U.S. at 147.

[31]*Id.* at 148–49.

[32]*Pope v. Cauffman*, 885 F. Supp. 1451 (D. Kan. 1995) (non-ERISA case discussing general versus specific prohibitions on changes of beneficiaries in TROs executed under K.S.A. 60-1607 pursuant to Kansas law); *Willoughby v. Willoughby*, 758 F. Supp. 646 (D. Kan. 1990) (ERISA case enforcing a general TRO based on Kansas law); *Nicholas v. Nicholas*, 83 P.3d 214 (Kan. 2004) (non-ERISA case holding that a change of beneficiary does not violate a TRO that restrained the parties from disposing of property); *Wear v. Mizell*, 946 P.2d 1363 (Kan. 1997) (non-ERISA case where no TRO existed prior to the decedent's act of changing a beneficiary during a pending divorce).  Cases cited by the parties outside Kansas likewise have similar facts.  *See*, *e.g.*, *Valley Forge Life Ins. Co. v. Delaney*, 313 F. Supp. 2d 1305 (M.D. Fla. 2002) (applying Florida law); *Gleed v. Noon*, 614 N.E.2d 676 (Mass. 1993) (applying Massachusetts law).

decided by Judge Saffels, who articulated the issue before the Court as: "whether the life insurance policy was property subject to the restraining order of the Shawnee County District Court."[33]  The Court did not consider the preemption issue nor explain why it applied Kansas law to a policy governed by ERISA.  The Court finds that this line of cases, along with the TRO itself, constitutes "state law" as contemplated by ERISA, 29 U.S.C. § 1144(c)(1).[34]  The TRO is a state action having the effect of law.[35]

Furthermore, the Court finds that the state law at issue here "relates to" the ERISA plan. First, the Court notes that consideration of the TRO in this case runs counter to the express provision in ERISA that directs plan administrators and fiduciaries to make decisions according to the plan documents.[36]  As already discussed, under the terms of the Plan, Stephen effectively designated Donald the primary beneficiary of the life insurance proceeds.  Therefore, if

---

[33]*Willoughby*, 758 F. Supp. at 648.

[34]*See Cent. States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000) (explaining that preemption applies to both legislative and judge-made law).

[35]Donald contends that Cathi did not comply with certain statutory procedures required before a District Judge may execute a TRO under K.S.A. § 60-1607.  Donald emphasizes that an *ex parte* TRO under K.S.A. § 60-1607(a)(1) requires an *ex parte* hearing and that no such hearing occurred in this instance.  He repeatedly points to a letter from the court clerk explaining that no transcript for a hearing existed because no such hearing occurred.  The Court disagrees that this defeats the validity of the TRO.  It appears obvious to the Court that Cathi complied with the requirements under K.S.A. § 60-1607 to obtain the TRO in question.  K.S.A. § 60-1607(b) explains that such an *ex parte* order may be entered after "hearing upon compliance with rules of the supreme court."  K. Sup. Ct. R. 131 and 132 provide that the district courts need not provide notice to all parties in the case of an *ex parte* matter and that the matter may be presented to the court on any court day.  Donald provides no law that stands for the proposition that the lack of a transcript for a formal hearing invalidates it.  In contrast, Cathi provided the affidavit of an attorney who routinely practices in the Butler County District Court, who attests that the procedure Cathi followed is in line with how all *ex parte* temporary restraining orders in domestic relations cases are handled in that court.  Further, the Court agrees that the appropriate method for challenging such an order was for Stephen to file a motion to modify the order, which explicitly requires a formal hearing.  The record is devoid of any indication that Stephen requested such a hearing.  In sum, the Court finds that the TRO was valid, and operates under this presumption when analyzing whether it is preempted by ERISA.

[36]29 U.S.C. §§ 1002(8), 1104(a)(1)(D); *see McGowan v. NJR Serv. Corp.*, 423 F.3d 241, 246 (3d Cir. 2005).

Principal administered the Plan solely based on the terms of the Plan and the plan documents, Donald Irwin should be the proper beneficiary.  However, if the Court finds that the Butler County TRO rendered Stephen's change of beneficiary void, Cathi would be the proper beneficiary.  The Court finds that the TRO in this case operates in much the same way as the Washington statute in *Egelhoff* because the TRO attempts to "govern[] the payment of benefits, a central matter of plan administration."[37]

Additionally, the Court finds that the TRO has a prohibited connection with the Plan because it interferes with the objective of ERISA for uniform administration.  As the Court has explained, "[u]niformity is impossible, however, if plans are subject to different legal obligations in different states."[38]  If the Kansas TRO is upheld as a valid method to automatically void all change of beneficiary designations validly made under ERISA plans, then "[p]lan administrators cannot make payments simply by identifying the beneficiary specified by the plan documents."[39]  The problem with this conflict was identified by the Court in *Egelhoff*:

> Instead they must familiarize themselves with state statutes so that they can determine whether the named beneficiary's status has been "revoked" by operation of law.  And in this context the burden is exacerbated by the choice-of-law problems that may confront an administrator when the employer is located in one State, the plan participant lives in another, and the participant's former spouse lives in a third.  In such a situation, administrators might find that plan payments are subject to conflicting legal obligations.

---

[37]*Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001); *see Manning v. Hayes* 212 F.3d 866 (5th Cir. 2000) (collecting cases holding that a state law governing designation of an ERISA beneficiary "relates to" an ERISA plan), *cert. denied*, 532 U.S. 941 (2001).

[38]*Egelhoff*, 532 U.S at 148–49.

[39]*Id.* at 149; *see also Unicare Life & Health Ins. Co. v. Craig*, No. 04-3192, 2005 WL 2323160, at * 3–4 (6th Cir. Sept. 22, 2005) (explaining the Sixth Circuit's bright line rule that the designation on file at the time of the insured's death controls based on the mandate found in 29 U.S.C. § 1104).

. . .

> We recognize that all state laws create some potential for a lack of uniformity. But differing state regulations affecting an ERISA plan's "system for processing claims and paying benefits" impose "precisely the burden that ERISA pre-emption was intended to avoid." And as we have noted, the statute at issue here directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents. We conclude that the Washington statute has a "connection with" ERISA plans and is therefore pre-empted.[40]

Indeed, the facts of this case present a clear example of the burden placed on an ERISA decisionmaker when a state regulation conflicts with the plan documents. The parties admit that neither RAC nor Principal received notice of the TRO when it was originally executed. It is unclear from the summary judgment record when they were first made aware of the existence of the TRO. However, Principal has indicated that it was uncertain when presented with the competing claims and the TRO, and sought to avoid multiple liability; thus, it did not pay the proceeds to either party. This is the entire basis for Principal's interpleader action.

Cathi argues that the realm of domestic law is the exclusive province of the states, and therefore, ERISA should not be allowed to preempt the TRO. The Supreme Court has soundly rejected this argument as an independent basis to find against preemption:

> Second, respondents emphasize that the Washington statute involves both family law and probate law, areas of traditional state regulation. There is indeed a presumption against pre-emption in areas of traditional state regulation such as family law. But that presumption can be overcome where, as here, Congress has made clear its desire for pre-emption. Accordingly, we have not hesitated to find state family law pre-empted when it conflicts

---

[40]*Egelhoff*, 532 U.S. at 148–50 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10 (1987)).

with ERISA or relates to ERISA plans.[41]

Furthermore, the Court is persuaded that the Tenth Circuit would find the TRO in this case relates to and is thus preempted by ERISA.  When deciding *Egelhoff*, the Supreme Court explained that there had been a circuit split on the preemption issue before it.[42]  It stated that the Fifth and Tenth Circuits had found preemption when presented with state laws similar to the Washington statute,[43] while the Ninth Circuit had found no preemption of such laws.[44]  In *Metropolitan Life Insurance Co. v. Hanslip*,[45] the Tenth Circuit considered whether ERISA preempted an Oklahoma statute that revoked beneficiary designations to ex-spouses on life insurance contracts upon death of the maker.  The court found that since the state law operated to designate a beneficiary to the life insurance policy, the preemption provision applied.[46]

Cathi maintains that *Egelhoff* is inapplicable here because the Butler County District Court did not seek to choose the beneficiary of the life insurance proceeds.  The Court disagrees. In *Central States, Southeast & Southwest Areas Pension Fund v. Howell*,[47] the Sixth Circuit explained that the preemption cases dealing with statutes such as those discussed in

---

[41]*Id.* at 151–52 (citation omitted).

[42]*Id.* at 146.

[43]*Id.* (citing *Manning v. Hayes*, 212 F.3d 866 (5th Cir. 2000), *cert. denied*, 532 U.S. 941 (2001); *Metro. Life Ins. Co. v. Hanslip*, 939 F.2d 904 (10th Cir. 1991)).

[44]*Id.* (citing *Emard v. Hughes Aircraft Co.*, 153 F.3d 949 (9th Cir. 1998)).

[45]939 F.2d 904 (10th Cir. 1991).

[46]*Id.* at 906.

[47]227 F.3d 672 (6th Cir. 2000).

18

*Hanslip* and *Egelhoff* applied equally to a TRO issued under Michigan law during a pending divorce.[48]  It explained that the TRO merely sought to achieve the opposite result of the beneficiary revocation statutes discussed in other cases—those statutes sought to negate a beneficiary designation while the TRO sought to preserve a beneficiary designation.[49]  The court emphasized that this type of order is no different than a divorce decree, which has been held to be preempted unless it falls under a statutory exception to preemption.[50]  For all of the reasons stated above, the Court finds that ERISA preempts the TRO and any otherwise applicable state law that relates to determining the appropriate beneficiary of the life insurance proceeds in this case.

### 2.  Whether the TRO is a Qualified Domestic Relations Order

ERISA provides a statutory exception to the preemption of state law in § 1144(b)(7), which states that preemption "shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title)."[51]  ERISA defines a domestic relations order as "any judgment, decree, or order . . . which—(I) relates to the provision of . . . marital property rights to a spouse [or] former spouse . . . and (II) is made pursuant to a State domestic relations law."[52]  The Court finds that the TRO in this case meets the definition of a domestic

---

[48]*Id.* at 677.

[49]*Id.* ("In our view, these are distinctions without a difference.  The power of the domestic relations court's order is not affected by whether the court has affirmatively ordered the insured to change his beneficiary or precluded the insured from making such a change.").

[50]*Id.*

[51]29 U.S.C. § 1144(b)(7).

[52]§ 1056(d)(3)(B)(ii).

relations order under ERISA.  It is a court order that relates to the provision of property rights to

a spouse.  Cathi's suggestion that the definition only applies to divorce decrees is an incorrect

interpretation of the statute.  Under the plain language of the statute, an order is a domestic

relations order if it relates to the property rights of a spouse <u>or</u> a former spouse.  It does not

limit its definition to divorce decrees, but instead includes all orders and judgments that relate to

marital property rights under state domestic relations law.  The TRO at issue here clearly falls

within this definition.[53]

A domestic relations order must be a qualified domestic relations order (QDRO) to be

exempt from preemption.  ERISA defines a qualified domestic relations order in section

1056(d)(3)(B)(i) as a domestic relations order that "creates or recognizes the existence of an

alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a

participant under a plan."[54]  As already discussed, the plan documents in this case

(notwithstanding the TRO) point to Donald as the correct primary beneficiary of the life

insurance proceeds, as Stephen effectively changed the beneficiary designation before his death.

The TRO attempts to recognize an alternate payee's (i.e. Cathi's) right to receive benefits under

the Plan.  However, to qualify as a QDRO under the statute, a court order must clearly specify:

> (i) the name and the last known mailing address (if any) of the
> participant and the name and mailing address of each alternate
> payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be
> paid by the plan to each such alternate payee, or the manner in

---

[53]*See Howell*, 227 F.3d at 677 (finding the definition of "domestic relations order" under ERISA includes a
pre-divorce restraining order).

[54]§ 1056(d)(3)(B)(i)(I).

which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.[55]

Although this definition states it is "for purposes of this paragraph," which exclusively deals with pension plan benefits, the Tenth Circuit has held that the QDRO exception to preemption applies to all QDROs "whether they involve a pension or welfare benefit plan."[56]

Both parties agree that the TRO is not a QDRO, as it does not contain all of the required information set forth in §1056(d)(3)(C) and was not provided to the plan administrator.[57] Therefore, the TRO is not exempt from preemption.  As explained above, the TRO operated to alter the terms of the Plan by requiring the plan administrator to look beyond the plan documents in determining the beneficiary, and is thus preempted.  Because the TRO does not meet the statutory definition of a QDRO, it may not operate as an exception to the preemption doctrine.

Cathi advances a number of policy arguments that ERISA should not preempt state domestic court orders.  Cathi argues that it is inequitable for state courts to treat ERISA and non-ERISA plans differently in fashioning initial restraining orders in divorce cases.  Cathi urges that a holding that allows for ERISA preemption of these types of restraining orders

---

[55]§ 1056(d)(3)(C).

[56]*Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114, 1120 (10th Cir. 1991), *cert. denied*, 502 U.S. 1020 (1991).  Cathi argues that *Carland* is inapplicable to the facts of this case because it involves a divorce decree and not a pre-divorce TRO.  This distinction is irrelevant to the court's holding that the QDRO exception applies to welfare benefit plans, and not just pension plans under ERISA. *Id.*

[57]However, a QDRO need not be provided to the plan administrator prior to the death of the insured in order to be effective.  *Patton v. Denver Post Corp.*, 326 F.3d 1148, 1151 (10th Cir. 2003).

impedes state courts' authority to maintain the status quo during the pendency of a divorce action.  She claims that at the early stages of a divorce, the parties have not completed discovery and therefore often lack the specific information necessary to bind plan administrators through a QDRO.

Cathi also appears to argue that since the TRO was not directed toward the plan administrator, it is not the type of "state law" that could be preempted, nor is it a QDRO.  This argument does not provide much mileage for Cathi, however, and is entirely inconsistent with the premise of her counterclaim.  In order to maintain an action against Principal, she must argue that it was bound by the TRO when deciding the appropriate beneficiary.[58]  However, when discussing preemption, she appears to argue that the entire point of this type of restraining order is that it is only directed to the participant (Stephen) and not to the plan administrator.

The principal goal of ERISA is "to protect plan participants and beneficiaries."[59]  Persons may seek to recover benefits from a welfare benefit plan under ERISA if they are a participant or beneficiary.[60]  As the Supreme Court has stated:

> QDRO's, unlike domestic relations orders in general, are exempt from . . . ERISA's general preemption clause, § 1147(b)(7).  In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary.  These provisions are essential to one of REA's central purposes, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse.  Apart

---

[58]Notwithstanding her claim that the Court should not reach the preemption question because of the delay in discovering the Change of Beneficiary Form.

[59]*Boggs v. Boggs*, 520 U.S. 833, 845 (1997).

[60]29 U.S.C. § 1132(a)(1)(B).

> from these detailed provisions, ERISA does not confer
> beneficiary status on nonparticipants by reason of their marital or
> dependent status.[61]

Cathi is correct that Congress did not intend to intrude upon state laws relating to domestic relations, "as long as they meet certain statutory requirements."[62]  Cathi concedes that these requirements were not met in this case.  Therefore, under ERISA, Cathi is neither a participant nor a beneficiary and may not assert a claim under § 1132(a)(1)(B) to recover benefits.  Additionally, the requirement that a domestic relations order such as the TRO here meet certain statutory requirements to be exempt from preemption allows for uniform interpretation, another goal of ERISA.[63]  In sum, because there is no QDRO in effect, the Court must follow the dictates on page 16 of the Plan, where it states: "You should name a beneficiary at the time you enroll for insurance.  You may later change your beneficiary by filing a written request with [Raytheon Aircraft Company]. . . . A change in your beneficiary will not be in force until [Raytheon Aircraft Company] records the change."  Because the Court finds that Stephen effectively changed the primary beneficiary under the terms of the Plan from Cathi to Donald, Donald is entitled to the life insurance proceeds on deposit with the court's registry.

### 3.  Cathi's Request for a Constructive Trust

For the first time in her second summary judgment memorandum, Cathi asserts that this Court should impose a constructive trust on the life insurance proceeds because all of the

---

[61]*Boggs*, 520 U.S. at 846–47.  The QDRO provisions in ERISA were contained in the 1984 Retirement Equity Act (REA)amendments, referenced in this passage.  *Id.* at 849.

[62]*Id.* at 848.

[63]*Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114, 1121–22 (10th Cir. 1991), *cert. denied*, 502 U.S. 1020 (1991).

equities lie with her.  Cathi argues that the Court has the authority to impose a constructive

trust, citing a Kansas Court of Appeals case.[64]  Donald does not respond to this prayer for relief

in his response memorandum.  However, Donald's burden to respond arises only if the motion

is properly supported in the first instance.[65]  "Accordingly, summary judgment is appropriate

under Rule 56(e) only when the moving party has met its initial burden of production under

Rule 56(c)."[66]  If the evidence presented by the moving party does not satisfy this burden,

"summary judgment must be denied *even if no opposing evidentiary matter is presented*."[67]

Thus, if a nonmoving party fails to respond to a motion for summary judgment, the Court must

first examine the moving party's submission to determine if it has met its initial burden of

demonstrating that no material issues of fact remain for trial and that the moving party is

entitled to judgment as a matter of law.[68]

The Tenth Circuit has not spoken to this issue, however, the Sixth Circuit has considered

whether a district court has authority to impose a constructive trust on welfare plan benefits

after they are released to the proper beneficiary under ERISA.[69]  After determining that the

TRO in that case was not a QDRO, and was therefore not exempt from preemption under

ERISA, the court held:

---

[64]*Hile v. DeVries*, 836 P.2d 1219 (Kan. Ct. App. 1992).

[65]*See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (stating that "'[n]o defense to an insufficient showing is required'" from the nonmoving party (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970))).

[66]*Id.* at 1194.

[67]*Id.* (citations omitted) (emphasis in original).

[68]*Id.* at 1194–95.

[69]*Cent. States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

> [O]nce the benefits have been released to the properly designated beneficiary, the district court has the discretion to impose a constructive trust upon those benefits in accordance with the applicable state law if equity so requires.  The district court's opinion did not fully discuss the equities among the parties because it apparently believed that ERISA precluded it from imposing a constructive trust.  We therefore REMAND this case for the district court's consideration of the equities under applicable Michigan state law.[70]

Because there is some authority that the Court may impose a constructive trust over the life insurance proceeds at issue, the Court will proceed to consider the equities of this case under Kansas law.[71]

Under Kansas law, a "district court has equitable power to create a constructive trust of the proceeds of an insurance policy when it determines there is an unjust enrichment to the named beneficiary."[72]  The power of the court to exercise equitable powers is not without limits. "The plain mandate of the law cannot be set aside because of considerations which may appeal to a referee or judge as falling within general principles of equity jurisprudence. . . . [A] court's equity powers may not be exercised in such a manner as to deprive a person of constitutionally or statutorily protected rights."[73]  Furthermore, "[i]nvalidating a deceased's designation of his or her beneficiary on life insurance . . . benefits on equitable grounds is nothing to be undertaken lightly."[74]  An essential element of proving a constructive trust is a showing of either actual or

---

[70]*Id.*

[71]*In re Amdura Corp.*, 75 F.3d 1447, 1452 (10th Cir. 1996) (looking to state law to determine if a constructive trust should be applied); *In re Albert*, 194 B.R. 907, 911 (D. Kan. 1996) (same).

[72]*Rice v. Garrison*, 898 P.2d 631, 643 (Kan. 1995) (Lockett, J. dissenting).

[73]*Id.* at 638 (citations omitted).

[74]*Id.* at 639; *accord Wear v. Mizell*, 946 P.2d 1363, 1369 (Kan. 1997).

constructive fraud.[75]

In *Hile v. DeVries*,[76] the Kansas Court of Appeals imposed a constructive trust on insurance proceeds because the deceased changed beneficiaries even though he was under a "legally binding property settlement agreement" to maintain his children as beneficiaries.[77]  In another case involving life insurance, the Kansas Supreme Court declined to impose a constructive trust when there was no contract between the deceased and his former spouse that obligated him to designate her as the beneficiary of his life insurance policies.[78]  The court in that case stated that there was not a "compelling factual situation" present to warrant imposition of a constructive trust, such as was the case in *Hile*.

This Court finds that the facts of this case are much more in line with *Hile* than with *Rice*.  Although Stephen did not sign a contract binding him to maintain Cathi as the primary beneficiary of his life insurance policies, he was served with the TRO, which ordered him not to change his life insurance beneficiaries.  It is undisputed that Stephen ignored the TRO and changed the beneficiary to these life insurance policies anyway.  The purpose of the restraining order in this case was to preserve the "status quo between the divorcing parties as to marital property."[79]  Kansas cases appear to conclude that a TRO such as this must specifically prohibit

---

[75]*Kampschroeder v. Kampschroeder*, 887 P.2d 1152, 1155 (Kan. Ct. App. 1995).

[76]836 P.2d 1219 (Kan. Ct. App. 1992).

[77]*Id.* at 1221.

[78]*Rice*, 898 P.2d at 639.

[79]*Nicholas v. Nicholas*, 83 P.3d 214, 222 (Kan. 2004) (quoting *Wear*, 946 P.2d at 1367).

changes in beneficiaries to life insurance policies to be effective.[80]  A general order prohibiting the "disposal" of property is insufficient.[81]  Here, the TRO did specifically prohibit Stephen from changing his beneficiary designation.  Much like the deceased in *Hile*, Stephen had a legal obligation to refrain from changing his life insurance beneficiaries and preserve the status quo pending his divorce action.  In intentionally ignoring the TRO by changing the primary life insurance beneficiary, Stephen committed an actual or constructive fraud upon both Cathi and the Butler County District Court.

The Court finds that Cathi has submitted evidence sufficient to conclude that there is no issue of material fact over whether Stephen committed actual or constructive fraud on the court and on Cathi.  As a result, the legal award of insurance benefits to Donald would allow for unjust enrichment.  The Court utilizes its equitable powers and enforces Stephen's legal obligation under the TRO to refrain from changing his life insurance beneficiary designations pending his divorce.  The Court finds that the equities heavily weigh in favor of imposing a constructive trust for the benefit of Cathi on the life insurance proceeds after they are awarded to Donald.

### B.  State Law Claim

A federal court sitting in diversity must apply the choice of law rules of the forum in

---

[80]*Pope v. Cauffman*, 885 F. Supp. 2d 1451, 1456 (D. Kan. 1995) ("the court does not believe that Kansas has or would adopt a rule that an insured's act of changing a beneficiary while subject to a temporary restraining order restraining the parties to a divorce action from selling, encumbering or disposing of the parties' property, *automatically* results in the voidance of the insured's change in the designation of the beneficiary."); *Nicholas*, 83 P.3d at 223–24 ("the district court had the power to prohibit [the deceased] from making a change of beneficiary designation, but no such order was entered in this case."); *Wear*, 946 P.2d at 1368 ("The better practice is to specifically reference a prohibition against a beneficiary change in a marital property restraining order.").

[81]*Nicholas*, 83 P.3d at 223–24;

which it sits.[82]   Several Kansas cases have concluded that "'the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred.'"[83]   Neither party disputes that Kansas law governs Cathi's state law cross-claim against Donald for tortious interference with contract.

Under Kansas law, the elements required to recover on a theory of tortious interference with contract are, (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom.[84]   Donald argues that summary judgment is appropriate on this claim because Cathi has not come forward with evidence that a contract was breached.   Cathi maintains that she had a contractual right to receive the life insurance proceeds in this case, and therefore, Donald's act of filing a claim and then a lawsuit for the same insurance proceeds interfered with those rights.

A claim for tortious interference with contract is aimed at "preserving existing contracts."[85]   Donald has met his initial burden of pointing to the absence of evidence of a contractual relationship upon which this tort claim may be based.   Therefore, Cathi must come forward with evidence of such a contract.   Cathi claims that the basis for her tortious interference claim is that she had a contract with Principal to receive the proceeds of Stephen's life insurance.   As described in the Court's discussion of ERISA preemption, the mere fact that

---

[82]*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496(1941); *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

[83]*Sys. Design & Mgmt. Info., Inc. v. Kansas City Post Office Employees Credit Union*, 788 P.2d 878, 881 (Kan. Ct. App. 1990) (quoting *Shutts v. Phillips Petroleum Co.*, 679 P.2d 1159 (Kan. 1984), *rev'd in part on other grounds*, 472 U.S. 797 (1985)).

[84]*Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130 (Kan. 2003); *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 256 (Kan. 1994); *Reebles, Inc. v. Bank of Am., N.A.*, 25 P.3d 871, 875 (Kan. Ct. App. 2001).

[85]*Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986).

the change of beneficiary form filled out by Stephen before his death was not found until after Cathi submitted her claim for benefits did not entitle Cathi to the proceeds prior to this time.  As the Court has already determined, under the terms of the Plan, and therefore ERISA, Donald was entitled to the insurance proceeds.  Cathi was a third-party beneficiary of a contract between Stephen and Principal who was divested by Stephen's act of changing the beneficiary designation.[86]

Furthermore, there is no evidence in the record that Principal contracted with Cathi to pay her the proceeds.  To the contrary, Principal never formally awarded the proceeds to either claimant and instead filed an action in interpleader in order to avoid multiple liability.  Additionally, the Court finds Donald was justified in his actions.  "Generally, a circumstance is effective as a justification if the defendant acts in the exercise of a right equal or superior to that of the plaintiff, or in the pursuit of some lawful interest or purpose."[87]  Donald asserted a good faith claim for insurance benefits based on his belief that the Change of Beneficiary Form had become effective before Stephen's death.  In fact, according to the terms of the Plan, it had become effective.  Donald was clearly asserting a right legally, if not equitably, superior to that of Cathi in pursuit of a lawful purpose.

Therefore, the Court finds that Cathi is unable to present a genuine issue of material fact over whether a contract was breached between her and Principal and whether Donald was justified in his actions.  Because these are essential elements of a claim of tortious interference

---

[86]*See Nicholas v. Nicholas*, 83 P.3d 214, 222 (Kan. 2004) (explaining that a life insurance beneficiary has only an inchoate right to the insurance proceeds and is subject to being divested at any time during the lifetime of the insured by change of beneficiary).

[87]*Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 258 (Kan. 1994) (quoting 45 Am Jur. 2d, Interference § 27).

with contract under Kansas law, the Court grants summary judgment to Donald on this cross-claim.[88]

## Motion for Summary Judgment by RAC and RACEBT

Donald's ERISA claim for benefits is made against Principal (the insurer), RAC (the plan administrator), and RACEBT (the policyholder of the Plan).[89]  Donald's first motion to amend the complaint merely asserts without explanation that he believes RAC is a necessary party to the lawsuit.  In its Answer, RAC asserts the affirmative defense that Donald failed to join an indispensable party.  The same day that it filed its Answer, RAC filed its first Motion for Summary Judgment, asserting that it is not a proper defendant, despite its designation as the plan administrator.  Approximately one month later, plaintiff again sought to amend the complaint to add the Plan, RACEBT.  Again, Donald asserted without explanation that RACEBT was a necessary party to the lawsuit.

Both RAC and RACEBT filed motions for summary judgment against Donald arguing that since Principal has admitted full monetary liability by interpleading the insurance proceeds, RAC and RACEBT are not necessary parties to this action.  Donald asserts that both RAC and RACEBT are necessary defendants in an ERISA claim under 29 U.S.C. § 1132(a)(1)(B).  The Court asked the parties to re-brief their summary judgment motions to address why the Plan and/or plan administrator are necessary parties to an ERISA action to recover benefits under § 1132(a)(1)(B) when the entire fund at issue has already been interpleaded into the court's

---

[88]*Nat'l Elec. Contractors Ass'n v. Kansas Chapter, Nat'l Elec. Contractors Ass'n*, No. 99-4023-RDR, 2000 WL 915088, at * 2 (D. Kan. June 13, 2000) (granting summary judgment because of failure to allege an actual breach of contract on tortious interference with contract claim).

[89]Cathi asserts no claims against these entities.

registry.[90]  The Court finds this question to be dispositive given that the competing claimants and Principal have agreed on the principal sum of benefits due and agree that Principal is liable for those benefits.  To be sure, neither party contested the principal sum of money that has now been interpleaded into the court's registry and, and the issues of interest and attorneys' fees have been resolved.  As a result, denying RAC or RACEBT summary judgment does not allow any recovery by Donald from those entities as a practical matter.

Donald asserts in his second response to summary judgment that "ERISA permits Donald to recover benefits against the Plan as an entity and suits for breach of fiduciary duty against the fiduciary."  This statement conflates two very distinct causes of action under ERISA.  In support of his assertion that he has some sort of breach of fiduciary duty claim, Donald cites 29 U.S.C. § 1109.  But, this section only allows for recovery by a plan for losses resulting from breaches of fiduciary duties.[91]  There is no question that ERISA permits suit against either or both RAC and RACEBT.  RAC is specified as the plan administrator in the Plan, and RACEBT is "the Plan."  The Court questions, however, Donald's contention that they are required parties necessary to obtain complete relief.  There is a circuit split on the issue of

---

[90]This should be contrasted with the question of necessary parties to ERISA actions brought under sections 1132(a)(3) or 1132(c), which Donald does not assert in his amended complaints.  Section 1132(c), for example, expressly limits relief for failure to provide certain requested information to the plan administrator.  Since the Court has determined that Cathi's claims are preempted, it need not address the issue as it relates to a claim under section 1132(a)(3) for equitable relief.  Additionally, only Donald and not Cathi named RAC and RACEBT as defendants in this case.

[91]29 U.S.C. § 1109(a)  ("Any person who is a fidiciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed . . . shall be personally liable to make good to such plan any losses . . . and to restore to such plan any profits of such fiduciary."); see Walter v. Int'l Ass'n of Machinists Pension Fund, 949 F.2d 310, 317 (10th Cir. 1991) (explaining under § 1109 fiduciary is liable to the plan and not the beneficiaries).

the proper party defendant in an action concerning ERISA benefits;[92] however the Court need not address the issue in order to grant summary judgment in favor of the Plan and plan administrator under the facts of this case.

Because the Court has now determined the proper beneficiary under the Plan and ERISA, there is no action left to be taken by RAC or RACEBT.  Further, Donald only asserts a claim to recover benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).  The undisputed sum of those benefits plus interest will be recovered from the court's registry.  Therefore, Donald has no claim for damages left against the remaining defendants.  The Court, therefore, grants summary judgment to RAC and RACEBT.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Donald Irwin's Motion for Summary Judgment (Doc. 139) on the ERISA claim and the state law claim is **GRANTED**.

**IT IS FURTHER ORDERED BY THE COURT THAT** Cathi Irwin's Second Motion for Partial Summary Judgment Against Donald Irwin (Doc. 141) is **GRANTED** in part and **DENIED** in part.  The motion is granted to the extent she requests the Court impose a constructive trust on the interpleader fund in her favor.  Cathi's motion for summary judgment is otherwise denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** RAC and RACEBT's Second Motion for Summary Judgment (Doc. 133) is **GRANTED**.

**IT IS SO ORDERED.**

---

[92]*See, e.g.*, *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 363 n.3 (2002) (recognizing circuit split); *Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 753–56 (9th Cir. 2001) (limiting suits for benefits against plans and plan administrators); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (7th Cir. 1997) (stating proper defendant is the party who controls administration of the plan).  *But c.f.*, *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404–05 (10th Cir. 1993) (rejecting theory of de facto administrator in a claim under § 1132(c)).

Dated this 16th day of December 2005.

    S/ Julie A. Robinson
Julie A. Robinson
United States District Judge